UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HARDY,

       Petitioner,                    CASE NO. 2:10-CV-14310

       v.                              HONORABLE GEORGE CARAM STEEH

THOMAS BIRKETT,

       Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF
HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE
OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

David Hardy, ("petitioner"), confined at the Kinross Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for carrying a concealed weapon (CCW), Mich. Comp. Laws § 750.227, possession of a firearm by a felon (felon in possession), Mich. Comp. Laws § 750.224f, possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b, and habitual offender, fourth offense, Mich. Comp. Laws § 769.12. For the reasons stated below, the petition for writ of habeas corpus is DENIED.

**I. Background**

Petitioner was convicted of the above offenses following a jury trial in the Oakland County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review

pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On April 19, 2007, Pontiac police officer Mark Ferguson stopped defendant who was accompanied by two female passengers while he was driving a 1992 Buick with improper license plates. The Buick was registered to defendant's mother. Officer Ferguson approached defendant and asked him for his license, registration and insurance. Defendant provided Ferguson his driver's license, but claimed that he had no other paper work. Ferguson asked defendant to look inside the glove box two or three times, but defendant kept insisting he had no further paperwork. Ferguson testified that while being asked to look for the paperwork, defendant was hesitant, nervous, and sweating. Defendant admitted at trial that he was nervous during his encounter with Ferguson, not because he had done something wrong, but only from the fact of being stopped by the police. After Ferguson determined defendant's license was suspended, he arrested defendant and placed him in the back of the patrol car. Ferguson released the passengers, impounded the Buick, and conducted an inventory search pursuant to police department policy. Ferguson found a loaded .38 caliber revolver in the glove box of the Buick.
>
> While being transported to the police station, defendant told Ferguson that the gun belonged to his father, who had a permit for it. Defendant also told Ferguson that he had been jumped on the street two times. Defendant testified that he did not make a statement in the exact words to which Ferguson testified, but rather that he said, "If there was [a gun] in there it was my father's." Defendant acknowledged that he told Ferguson the gun was registered and also that the gun admitted at trial looked like his father's gun.
>
> Oakland County Sheriff's Deputy Robert Charlton testified as a firearms expert that the .38 caliber six-shot revolver seized by the police in this case was registered to defendant's father, Lawrence Hardy. Charlton described the gun as clean and in good working order.
>
> Sergeant Brian McLaughlin contacted defendant in a holding cell in the booking area of the police department. McLaughlin interviewed defendant after taking him out of the holding cell and moving to a table and chairs in the back of the booking area. McLaughlin testified that he advised defendant of his *Miranda* [1] rights from a police department form that defendant signed.

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L. Ed. 2d 694 (1966). The trial court denied defendant's pretrial motion to suppress his statements after conducting a hearing pursuant to *People v. Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965)(footnote original).

Defendant stated that the gun was in the glove box about one and a half years after having been placed there by an old girlfriend of his. Defendant also stated he thought that the gun was loaded. McLaughlin asked defendant why the gun was in the Buick. Defendant responded that he had been jumped and assaulted and that everyone had the right of self-protection. McLaughlin testified defendant never did acknowledge putting the gun in the car. After the oral interview, McLaughlin asked defendant to write out a statement. Defendant's hand-written statement was admitted as an exhibit at trial and reads as follows:

Over 2 years ago I had gotten jumped for no reasons . . . an ex girlfriend told me I should have protection and to the best of my knowledge, WHILE I WAS GONE [2] from 10/05 to 8/06, SHE HAD TOLD ME AS LONG AS SHE WAS AROUND SHE WOULD NOT LET ANYTHING HAPPEN TO ME . . . I HAD KNOWN THAT MY FATHER'S HANDGUN (which IS REGISTERED) was missing I suspected she had it, but I did not KNOW WHERE SHE HAD HIDDEN IT, NOR DID I TAKE . . . BUT I DO NOT LIKE THIS OFFICER IMPLYING THAT I KNEW THAT GUN WAS THERE . . . IN FACT, MY MOTHER'S CAR HAD NOT BEEN DRIVEN FOR MONTHS. /S/

Pursuant to a successful pretrial motion, the prosecutor also admitted evidence of a similar incident that had occurred on May 7, 2005. Farmington Hills Detective Michael Connolly testified that on that day he was working as a patrol officer when he contacted defendant regarding a 1992 Buick that was illegally parked in a handicapped space in front of a 7-11 store. Defendant was the driver of the Buick, in which there were two passengers. Defendant was seated in the driver's seat when Connolly approached. Connolly testified he smelled and saw open intoxicants inside the Buick. He asked defendant to step out of the car, and asked for and received consent to a search the vehicle. Connolly testified he found a loaded, six-shot, .38 caliber revolver in a canvas bag with over 50 rounds of ammunition and also additional loose ammunition in the center console of the car. Defendant told Connolly that an unknown person had placed the gun in his car.

Defendant called his mother, Gladys Hardy, as a witness. Mrs. Hardy testified that she lived in Pontiac with her husband, who died before the start of the trial. She owned the 1992 Buick and at some point she allowed the registration plate to expire. Mrs. Hardy testified she allowed defendant, who lived with her, to drive the Buick. She recalled the police had stopped defendant while driving it in 2005. Her husband owned a .38 caliber revolver

---

[2] The parties agreed to redact the words "IN JAIL" and insert the phrase "WAS GONE." (footnote original).

that he kept in a desk drawer that had a broken lock. Mrs. Hardy did not put her husband's gun in the Buick and had no knowledge how it might have gotten there. Sometimes, defendant had friends at the house, but they did not spend the night. If one of them had a key, she did not know about it. She also did not know anything about defendant being beaten up or being robbed.

Defendant chose to testify in his own defense. Defendant admitted that he lived with his mother and was driving her 1992 Buick in May 2005, when the Farmington Hills police arrested him. He disagreed, however, with Detective Connolly's version of events, noting that he intended to appeal that case. He denied that he consented to a search of the Buick but admitted Connolly found a gun in the car, he thought, "under the back area." Defendant testified to his version of the events of that incident; he denied that he knew there was a gun in the car on that occasion.

Defendant further testified that on April 19, 2007, he was again driving his mother's 1992 Buick with two passengers; he knew that the license plate for the Buick was improper because he put "tags" from a truck on it. Defendant also disagreed with Ferguson's version of events and the statement he made to Ferguson in the patrol car, as noted already. Defendant denied that he placed the gun in the Buick's glove box, denied seeing anyone else place it there, and denied knowing the gun was there when Ferguson stopped him.

Regarding his statements at the police station, defendant testified that McLaughlin took him from a holding cell to the booking cage to advise him of his *Miranda* rights. Then when defendant told the officer he wanted an attorney, the officer's demeanor changed. Defendant claims McLaughlin told him, "I got some Detectives upstairs they [sic] can pin a murder case on you." Defendant claims the officer then put him in the little cage (holding cell) in the booking area with a piece of paper and told him to write out a statement. Defendant testified that he just started scribbling stuff. Although he acknowledged writing the statement admitted at trial, defendant asserted the only truthful parts of it were that he did not like the officer's implying that he knew that the gun was in the car and that his mother's car had not been driven for months. Defendant claimed that he did not recall talking much to McLaughlin and denied stating that he knew the gun was in the car.

At the conclusion of the proofs, defense counsel moved for but was denied a directed verdict. Counsel also placed on the record that before the start of the trial, she had counseled defendant regarding his right to testify and his right to remain silent. Defendant acknowledged this talking with her, and that it was his free and voluntary choice to testify.

*People v. Hardy,* No. 287181, * 1-4, 2010 WL 2925776, * 1 (Mich.Ct.App. February 11, 2010).

Petitioner's conviction was affirmed on appeal. *Id; lv. den.* 488 Mich. 1035; 793 N.W. 2d 233 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Fourth Amend. Right violated in connection with a search incident to arrest and not afforded 'a full and fair' opportunity to raise this issue (Powell, 96 S.Ct 3037).

II. Sixth Amend. violation-ineffective assistance of counsel(attys. Trek Carethers; Pamela Johnson; Robin Lerg…)

III. Fifth Amend. violation-coerced confession and double jeopardy, inter alia…

IV. Fourteenth Amend. violation-police misconduct and prosecutorial misconduct, inter alia…

V. Sixth Amend. violation and Fourteenth Amend. violation by Atty. Pamela I. Johnson's gross misconduct & subornation of perjury.

VI. Fourteenth Amend. violation (Equal Protection Clause), i.e. the interim bail statute, inter alia.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing petitioner's claim, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

### III. Discussion

**A. Fourth Amendment violation.**

In his first claim, petitioner contends that his rights under the Fourth Amendment were violated when his mother's car was subjected to an inventory search incident to arrest.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).  The relevant inquiry is whether a habeas petitioner had an opportunity to litigate his claims, not whether he in fact did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico*, 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grds* 606 F.3d 867 (6th Cir. 2010).  Indeed, under *Stone*, the correctness of a state court's conclusions regarding a Fourth Amendment claim "is simply irrelevant." See *Brown v. Berghuis*, 638 F. Supp, 2d 795, 812 (E.D. Mich. 2009).  "The courts that have considered the matter 'have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar.'" *Id*. (quoting *Gilmore v. Marks*, 799 F.2d 51, 57 (3rd Cir. 1986)). Thus, an argument by a habeas petitioner that is "directed solely at the correctness of the state court decision[on a Fourth Amendment claim] 'goes not to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant.'" *Brown*, 638 F. Supp. 2d at 812-13 (quoting *Siripongs v. Calderon*, 35 F. 3d 1308, 1321 (9th Cir. 1994)).

Petitioner raised his Fourth Amendment claims before the Michigan appellate courts. The opportunity to litigate pursuant to *Stone v. Powell*, includes corrective

action available through the appellate process on direct review of the conviction. See *Pulver v. Cunningham*, 419 F.Supp. 1221, 1224 (S.D.N.Y.1976); See also *Rashad v. Lafler*, 675 F. 3d 564, 570 (6th Cir. 2012)(petitioner had ample opportunities in state court to present his Fourth Amendment claims, thus precluding federal habeas relief based on the state court's failure to apply the exclusionary rule; trial court rejected defendant's Fourth Amendment claims on forfeiture grounds because his attorney did not show up at a hearing designed to consider them, and a state appellate court rejected his claims on the merits); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004)(petitioner's Fourth Amendment claim was not cognizable on habeas review, even though the petitioner did not challenge the legality of his arrest prior to trial, where the petitioner first raised the issue in a post-trial motion and then on direct appeal and was denied relief). Because all of the material facts were before the state appellate courts on direct review and the appellate process was not otherwise deficient, petitioner had a full and fair opportunity to litigate his Fourth Amendment claim. Petitioner is not entitled to habeas relief on his first claim.

### B. Sixth Amendment violation

The Court next consider petitioner's second and fifth claims together for judicial economy. In his second claim, petitioner contends that both trial and appellate counsels were ineffective and that trial counsel's gross misconduct and subornation of perjury denied him of his rights under the Sixth Amendment.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was

so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. Id. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Strickland's test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. at 792). The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F. 3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of

the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. Id. This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Petitioner first contends that trial counsel was ineffective for failing to bring a Fourth Amendment challenge to the legality of the police search. The Michigan Court of Appeals rejected this claim, on the ground that petitioner had been lawfully arrested for operating without a driver's license, that the car that he was driving did not have a proper registration plate and that the owner of the car was not present. The Michigan Court of Appeals concluded that Officer Ferguson properly impounded the car and conducted a lawful inventory search pursuant to departmental policy. *Hardy,* Slip. Op. at * 9.

To prove that counsel's failure to litigate a Fourth Amendment claim competently is the principal claim of ineffectiveness, a defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the

-11-

verdict would have been different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *See also Mack v. Jones,* 540 F. Supp. 2d 840, 848 (E.D. Mich. 2008). In the present case, petitioner has offered no facts or argument to establish that petitioner's arrest was unlawful or that the subsequent inventory search was improper. Petitioner is thus not entitled to habeas relief on this portion of his claim.

Petitioner next claims that he was denied the effective assistance of trial counsel when trial counsel failed to subpoena police video recordings, which when trial counsel failed to file motions at the preliminary exam, and when trial counsel failed to preserve petitioner's father testimony at the preliminary examination.

Petitioner has not demonstrated how his father's testimony or procurement of a police tape recordings, had they been available, would have resulted in a different outcome. The police recordings at issue were routinely copied over and unavailable for trial counsel to subpoena. Therefore, motions to procure the tapes would be fruitless and meritless. Moreover, petitioner has failed to show that the tape recordings were exculpatory or that the police acted in bad faith in failing to preserve them, thus, trial counsel was not ineffective in failing to seek the preservation of the tapes on this basis. *See Monzo v. Edwards,* 281 F. 3d 568, 580 (6th Cir. 2002).

Petitioner has also failed to show how his father's preserved testimony pertaining to ownership of the revolver and placement of the revolver would have assisted in his defense. The issue before the court pertained to petitioner's knowledge of the .38 caliber revolver found in the glove compartment. A statement signed by petitioner claimed that a former girlfriend had taken the revolver for his protection. Petitioner

appeared nervous when asked to look in the glove compartment for the registration and insurance. Furthermore, petitioner's prior conviction mirrors the circumstances found in the matter before the court. Both involve a traffic stop, two passengers, and possession of a .38 caliber revolver. The testimony of petitioner's father would not assist in petitioner's claim that he did not know that the gun was in the glove compartment. At most, it would confirm that the gun belonged to his father and was missing. A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams*, 376 F. 3d 520, 527 (6th Cir. 2004)(internal quotation omitted).

In regards to appellate counsel's refusal to file claims found in Petitioner's Rule 4 supplemental brief, counsel was not ineffective for refusing to file meritless claims. Petitioner's had an opportunity to bring his additional claims, which were found meritless by the Michigan Court of Appeals. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of the claims raised by petitioner in his Rule 4 Supplemental Brief can be shown to be meritorious, appellate counsel was not ineffective in her handling of petitioner's direct appeal. Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

**C. Fifth Amendment violation - coerced confession and double jeopardy.**

For judicial economy, the Court will combine petitioner's third and fourth allegations pertaining to tape recordings which should have been utilized during the

taking of the "coerced confession/statement," with petitioner's allegation that his statement was coerced.

Petitioner's third claim alleges that the prosecutor used a "coerced confession" at trial and the trial court judge improperly allowed testimony from Officer Connerly in connection with his prior CCW which he views as another trial on the prior offense, thereby constituting double jeopardy.

Petitioner initially claims that his confession should have been suppressed, because he was coerced into making the confession after being threatened that his charges could be raised to murder charges if he did not cooperate. Petitioner filed a motion to suppress his confession. An evidentiary hearing was conducted in the trial court, after which the trial judge denied the motion to suppress, finding that the police were credible but petitioner was not. The Michigan Court of Appeals deferred to the trial court's credibility assessment in rejecting petitioner's coerced confession. *Hardy,* Slip. Op. at * 10-11.

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). Subsidiary factual questions in determining the voluntariness of a statement to police, such as whether the police engaged in intimidation tactics alleged by a habeas petitioner, are entitled to the presumption of correctness accorded to state court findings of fact. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). In this case, the state trial court's finding that police officers made no promises or threats to induce an incriminating statement from petitioner, so that his statement

was voluntarily made, is entitled to the presumption of correctness, because petitioner has failed to present clear and convincing evidence to rebut this presumption. *Pritchett v. Pitcher*, 117 F. 3d 959, 963-64 (6th Cir. 1997). Because petitioner has failed to present clear and convincing evidence to rebut this presumption, he is not entitled to challenge the trial court's credibility determination concerning the voluntariness of his confession on habeas review. *See Walendzinski v. Renico*, 354 F. Supp. 2d 752, 760 (E.D. Mich. 2005). Petitioner sets forth the premise that there is no "independent source" such as video recordings "because he did not say any of those things and this entire trial/case is based on "believing the officers in that petitioner told them that petitioner knew of the presence of the gun." The trial judge, however, heard the testimony of the officers and petitioner and chose to believe the police. Because petitioner has failed to offer clear and convincing evidence to rebut the trial court's finding that the confession was voluntary, he is not entitled to habeas relief on his claim.

Furthermore, any claim that his confession should have been suppressed because the police failed to make an audio or video recording of it is not cognizable on federal habeas review, since the United States Supreme Court has not established a federal constitutional right to have police interrogations audio or videotaped. *See Brown v. McKee*, 231 Fed. Appx. 469, 475 (6th Cir.2007); *Crenshaw v. Renico*, 261 F. Supp. 2d 826, 837 (E.D. Mich. 2003). Given the lack of holdings by the Supreme Court on the issue of whether a defendant has a constitutional right to have his confession audio or videotaped, the Michigan Court of Appeals' rejection of Petitioner's claim was not an unreasonable application of clearly established federal law. *See Carey v. Musladin*, 549 U.S. 70, 77 ( 2006).

The second part of petitioner's claim alleges that he was subject to double jeopardy. Petitioner claims that testimony admitted during trial pertaining to his prior CCW conviction constituted double jeopardy. The Michigan Court of Appeals rejected this claim on its merits:

> Both the United States and Michigan Constitutions prohibit a person from twice being placcd in jeopardy for the same offense. US Const, Am V; Const 1963, art I, § 15; *People v Conley*, 270 Mich App 301, 311; 715 NW2d 377 (2006). These constitutional provisions afford protection against: 1) a second prosecution for the same offense after acquittal; 2) a second prosecution for the same offense after conviction; and 3) multiple punishments for the same offense. Neither multiple prosecutions nor multiple punishments are involved in this case. *Id.* Rather, evidence regarding the 2005 incident was properly admitted because it was relevant to the charge that defendant on the day he was stopped in 2007, was knowingly carrying a pistol in the vehicle he operated or occupied. MCL 750.227(2). This issue is without merit.

*Hardy*, Slip. Op. at * 9-10.

The use of a prior conviction to impeach the credibility of a defendant does not violate the Double Jeopardy Clause. *See U.S. v. Johnson*, 709 F. 2d 639, 642 (11th Cir. 1983). Petitioner is not entitled to relief on his third claim.

### D. Prosecutorial Misconduct

The remaining portion of Petitioner's fourth claim alleges prosecutorial misconduct in connection with the prosecutor objecting and the trial judge ruling that the statement made prior to the death of petitioner's father would not be allowed into evidence. Contrary to petitioner's contention, the court has concluded that the statement made by petitioner's father would not exculpate petitioner, being that it merely confirms that the revolver belonged to petitioner's father; whether or not it was placed in the glove compartment by his father, the jury found that petitioner had knowledge of the

presence of the revolver located in the glove compartment of the vehicle. As such, the statement in question was not material to proving petitioner innocent of the charges. Petitioner is not entitled to relief on his fourth claim.

### E. Sixth Amendment violation pertaining to gross misconduct and subornation of perjury.

Petitioner's fifth contention pertains to an alteration of the statement made upon his arrest. To avoid prejudice, counsel agreed to alter the document to read "gone," rather than "in jail." Petitioner claims that the redaction was made to deceive the jury. The redaction is the basis of petitioner's claim that trial counsel committed gross misconduct and agreeing to the redaction was unethical. Petitioner also claims that his trial counsel was unethical in submitting perjury through his mother's testimony. Apparently, counsel questioned petitioner's mother regarding a broken lock on his father's desk, referring to a an earlier phone conversation prior to petitioner's trial. Petitioner has not demonstrated that the statement was untrue, nor can it be shown that the testimony was not part of trial counsel's strategy. After all, petitioner's earlier statement claimed that a girlfriend had access to the gun while he was in jail. Conclusory allegations in a habeas petition, without evidentiary support, do not provide a basis for habeas relief. *Payne v. Smith*, 207 F. Supp. 2d 627, 650 (E.D. Mich. 2002). Petitioner's fifth claim is without merit.

### F. Failure to inform of his right to bond/bail.

Petitioner's sixth and final claim alleges the Officer Mark Ferguson failed to inform him that he had a right to post bond/bail.

Petitioner's conviction has rendered moot any constitutional claims regarding his pre-trial bail. *See U.S. v. Manthey*, 92 Fed. Appx. 291, 297 (6th Cir. 2004)(citing *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)("Hunt's claim to pretrial bail was moot once he was convicted")). Petitioner is not entitled to habeas relief on his sixth and final claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated: September 11, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 11, 2013, by electronic and/or ordinary mail and also on David Hardy #159525, Bellamy Creek Correctional Facility, 1727 West Bluewater Highway, Ionia, MI 48846.

s/Barbara Radke
Deputy Clerk